IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA SIBETO, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 13-1674 |
| vs. | ) | |
| | ) | Judge Mark R. Hornak/ |
| | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| CAPELLA UNIVERSITY, | ) | Re: ECF No. 9 |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

Plaintiff Anna Sibeto ("Plaintiff" or "Sibeto") has initiated this action against Defendant Capella University ("Defendant" or "Cappella"), asserting four claims arising out of Capella's alleged misrepresentations and breach of contract regarding available educational services in connection with her doctoral dissertation. In particular, Sibeto alleges claims for (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; and (4) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

Capella has filed a Motion to Dismiss (ECF No. 9) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of Plaintiff's intentional and negligent misrepresentation claims, as well her UTPCPL claim. For the following reasons, it is respectfully recommended that the motion be granted with respect to Plaintiff's intentional and negligent misrepresentation claims, and denied as to her UTPCPL claim.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

When considering a motion to dismiss, the Court must accept as true the factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purposes of this decision, the essential facts are as follows.

Sibeto, a Pennsylvania resident, seeks compensatory, treble and punitive damages in excess of $75,000, from Capella, a Minnesota corporation, and asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1] In her Complaint, Sibeto alleges that since at least 2003, she has been a Spanish and French teacher at Moon High School. Hoping to further her career and income prospects, Sibeto applied to Capella University's Professional Studies doctoral program in the School of Education. She was accepted into the program and enrolled during the summer of 2003.

Sibeto alleges that upon her enrollment, a valid and binding contract was formed between the parties whereby she "agreed to purchase and Capella agreed to provide a doctoral-level education culminating in ... a doctoral degree after she completed certain requisite coursework." Complaint, ECF No. 1, ¶ 11. As part of Capella's doctoral program, Sibeto was required to complete a dissertation. The Complaint incorporates Capella's "Dissertation Manual" which describes the terms and conditions for satisfactory completion of the required dissertation, and sets forth Capella's obligation to mentor each doctoral candidate through the process. In particular, the Dissertation Manual obligated Capella to provide a mentor to

---

[1] The Complaint fails to allege the amounts paid for tuition, but "'[t]he sum claimed by the plaintiff controls [for purposes of determining the propriety of jurisdiction] if the claim is apparently made in good faith.'" Thomas v. Nova Southeastern University, 468 F. App'x 98 (3d Cir. 2012), quoting, Dardovitch v. Haltzman, 190 F.3d 125, 135 (3d Cir. 1999).

1. "guide and support the learner;"

2. "provide feedback on the learner's research and writing skills, and refer[] … [the learner] to additional support services … when those skills need further development;"

3. Engage in efforts with the learner on the "communication skills of writing, discussing and negotiation;"

4. "[E]nsure that the proposal … and the completed dissertation comply with all criteria used to evaluate acceptable scholar-practitioner work at the doctoral level;" and,

5. "[G]uid[e] the learner through the development of the proposal … and supervis[e] the learner in conducting the research project."

Complaint, ECF No. 1, ¶¶ 21(a) – 21(e).

Sibeto alleges that after completing the comprehensive course requirements in 2005, Capella's mentors provided "very little, if any, communication" or assistance with regard to the development and execution of her required dissertation. Her first mentor, Dr. Conrad, allegedly offered no feedback or guidance and delayed until June 2006 to inform Sibeto that she should find a different mentor. Her second mentor, Dr. Amar Almasude also failed to offer Sibeto any guidance. In January 2008, Sibeto contacted her academic advisor to complain about the lack of guidance and was told to contact "the head of the Department of Professional Studies" for assistance. Sibeto alleges that in recognition of the mentor-related difficulties, Capella reimbursed her for one-quarter of the tuition paid to date. In July 2008, Capella recommended that Sibeto change her dissertation mentor to Dr. Jason Ward. Capella also assigned Sibeto a new academic advisor, Jonathan Gehrz ("Gehrz").

In July 2008, Capella designated Sibeto as an inactive student because she had not made sufficient progress on her dissertation. Sibeto was informed that she could remain inactive for only one academic quarter or risk dismissal. Her new mentor, Dr. Ward, suggested that Sibeto

3

appeal the decision so she could remain in the doctoral program. Sibeto successfully appealed and for the next three years, Dr. Ward encouraged Sibeto to continue working on her dissertation. Dr. Ward's advice and feedback during this period was scant and he repeatedly suggested that her work toward completing her dissertation was satisfactory. Sibeto made Dr. Ward's few suggested changes and was told she was "getting close to a 'pass[ing]' grade." ECF No. 1, ¶ 60.

In March 2009, Sibeto submitted her dissertation to Capella's dissertation committee. The committee informed Sibeto that she would need to come up with a new proposal and rewrite her dissertation. In addition, Capella required Sibeto to complete an Advanced Practicum in Research Design to assist Sibeto with her "writing struggles." ECF No. 1, ¶¶ 66-68. Sibeto earned an A in the course.

Dr. Ward and Dr. Gehrz encouraged Sibeto to apply for multiple extensions of time to complete her dissertation. Sibeto requested and received three extensions; however, in February 2011, Capella informed Sibeto that she would be granted no further extensions, and that it would credit her work toward a master's degree in professional studies. Sibeto refused Capella's offer of a master's degree and so Capella granted Sibeto yet one more opportunity to finish her dissertation. Sibeto again was directed to collaborate with Dr. Ward and was informed that her dissertation was due for approval by June 17, 2011. During the Spring of 2011, Sibeto submitted a draft of the initial chapters of her dissertation and was told by Dr. Ward and by a member of the dissertation committee that with certain changes, her proposal would be "fine" and only needed "a little work." Sibeto asked Dr. Ward for specific details and suggestions for the changes, but Dr. Ward never responded. Instead, on June 7, 2011, Sibeto was told that she was "not situated to meet the deadline and feasibly not situated to even secure committee approval in

4

the time remaining." ECF No. 1, ¶ 87. Again, Gehrz encouraged Sibeto to press on toward completion, but offered no guidance. Capella gave Sibeto one more extension, until the end of the fall 2011 semester, to finish her dissertation and obtain approval. Sibeto continued her work. In December 2011, Capella finally told Sibeto that her dissertation was inadequate and that she would be removed from the doctoral program.

Sibeto alleges that throughout her period of enrollment at Capella, she continued to pay tuition and fees, as well as certain education-related expenses. Capella accepted Sibeto's tuition payments and repeatedly provided false information concerning her satisfactory progress toward the completion of her required dissertation. In particular, Sibeto alleges that she continued her enrollment based upon representations that she was "close to finishing her doctoral work and would indeed finish if she stayed enrolled." ECF No. 1, ¶ 102.

As a result of Capella's failure to provide the required mentorship and guidance, and continued misrepresentations concerning Sibeto's progress toward her doctoral degree, Sibeto alleges that Capella breached its contract with her and made intentional and negligent misrepresentations in order to lull Sibeto into continued tuition and fee payments. Sibeto alleges these deceptive practices constitute violations of the UTPCPL.

Capella seeks dismissal of Plaintiff's UTPCPL claim, contending that the payment of tuition does not qualify as the purchase of services "primarily for personal, family or household purposes" as required by 73 P.S. § 201-9.2(a). Capella further seeks the dismissal of Sibeto's negligent and intentional misrepresentation claims as barred by the "gist of the action" and/or economic loss doctrines, and otherwise failing to allege the misrepresentation of a material fact.

B.  STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 513 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## C. DISCUSSION

### 1. UTPCPL Claim

The UTPCPL creates a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money," as a result of the use of the seller's deceptive representations. 73 Pa.C.S. §§ 201-2, 201-9.2(a). "To state a claim under the UTPCPL, a plaintiff must show: (1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury." Harris v. Saint Joseph's University, No. 13-3937, 2014 WL 1910242 at *7 (E.D. Pa. May 13, 2014).

Capella contends that Sibeto cannot state a claim under the UTPCPL because her payment of tuition was not primarily for personal, family or household purposes, but instead to further her professional career, and therefore outside the scope of the remedial statute. This argument is unpersuasive.

First, the Pennsylvania UTPCPL has been found applicable to individual consumers regardless of the profit motive of the purchaser so long as misrepresentations are made in the delivery of a service provided to a "person" (as defined by the UTPCPL). For example, the UTPCPL has been found applicable to allegations that a brokerage firm committed fraud in the manner in which a security purchase was handled or in explaining brokerage services to be provided to a consumer. See, e.g., Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 178 (3d Cir. 1997) (discussing cases and distinguishing claims before it); Denison v. Kelly, 759 F. Supp. 199, 202 (M.D. Pa. 1991). In this case, the educational services were

provided to Sibeto in her personal capacity. Accordingly, her presumed personal or profit motive in seeking a doctoral degree is not relevant for purposes of determining Capella's statutory liability.

Second, the Pennsylvania Supreme Court has implicitly recognized the viability of a UTPCPL claim to recover tuition and fees in an educational setting. In <u>Meyer v. Community College of Beaver County</u>, 2 A.3d 499 (Pa. 2010), a group of Beaver County Community College students had completed a substantial portion of a police training program when they learned that the program was decertified because of "some fairly egregious failures" on the part of the College. As a result of decertification, credits earned could not be transferred to a different institution. The students filed suit against the College, alleging breach of contract as well as claims under the UTPCPL. The issue on appeal was whether the contract driven UTPCPL claims against the College, a local governmental entity, could survive the immunity provisions of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8521 (providing that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency," subject to eight enumerated exceptions). The trial court held that the immunity provision did not bar plaintiffs' suit, because the UTPCPL claims arise from causes of action in contract, and the Political Subdivision Tort Claims Act is directed to tort actions. <u>Meyer</u>, 2 A.3d at 500. On appeal, the Pennsylvania Commonwealth Court, *sua sponte*, ruled that local agencies are immune from all statutory causes of action, whether arising in contract or tort, where one of the eight enumerated exceptions to governmental immunity is not implicated.

The Pennsylvania Supreme Court reversed, concluding that governmental immunity under the Political Subdivision Tort Claims Act does not extend to statutory causes of action

8

arising in contract, such as the students' UTPCPL claims. To find otherwise, the Court noted, would have far reaching implications regarding the impairment of contractual relationships with government agencies. The Supreme Court remanded the action to the Commonwealth Court for consideration of the College's second issue on appeal, namely, whether the College is a "person" subject to liability under the UTPCPL. Id., at 503 and Meyer v. Community College of Beaver County, 965 A.2d 406, 410 (Pa. Commw. 2009). Implicitly, however, the Pennsylvania Supreme Court recognized the viability of the UTPCPL claims arising out of the College's conduct in accepting tuition for a substandard professional program.

The litigation of Meyer continues. On remand, the Commonwealth Court held that a governmental entity, such as Beaver County Community College, qualifies as a "person" under the UTPCPL for purposes of liability. Meyer v. Community College of Beaver County, 30 A.3d 587 (Pa. Commw. 2011). The Pennsylvania Supreme Court has again granted allowance of appeal, to resolve the propriety of the Commonwealth Court's application of statutory construction rules to discern legislative intent regarding the scope of the definition of "person." Meyer v. Community College of Beaver County, 51 A.3d 177 (Pa. Aug. 3, 2012). This appeal is pending. However, it remains clear that the purchase of educational services is not a bar to an UTPCPL claim.

UTPCPL claims arising from the delivery of education services have been permitted to proceed in at least two other Pennsylvania federal actions. In Dillon v. Ultrasound Diagnostic Schools, Nos. 96-8322, 97-1268, 97-6477, 1997 WL 805216 (E.D. Pa. December 18, 1997), former students brought breach of contract and UTPCPL claims against defendants, alleging the failure to provide promised educational services and facilities. Defendants filed a motion to dismiss based upon the purported inadequacy of plaintiffs' fraud allegations. The United States

9

District Court for the Eastern District of Pennsylvania summarily determined that the fraud allegations were sufficiently particular so as to state a claim under the UTPCPL, and denied defendants' motion to dismiss. In Harris v. Saint Joseph's University, *supra*, defendant argued that "'to have standing to state a claim under the UTPCPL, a party must be, as a threshold matter, someone who "purchases or leases" goods or services for "personal, family, or household purposes."'" Harris, 2014 WL 1910242 at * 6. Defendant contended that if plaintiff's parents paid tuition, plaintiff did not have standing for a UTPCPL claim. The Court denied the motion to dismiss on this ground, finding that the amended complaint sufficiently alleged that plaintiff "purchased, inter alia, educational services from SJU for which he remitted payment in the form of tuition and fees." Id. The purchase of educational services for personal profit upon graduation was not a bar to the plaintiff's UTPCPL claim.

In this case, and in the absence of any statutory prohibition or governing case law to the contrary, given Sibeto's allegation that she purchased educational services from Capella in furtherance of a doctoral degree to be issued in her personal name, Defendant's Motion to Dismiss Plaintiff's UTPCPL claim is denied.

## 2. Intentional and Negligent Misrepresentation Claims

Capella seeks dismissal of Sibeto's intentional and negligent misrepresentation claims (Counts II and III) as barred by the "gist of the action" doctrine and the economic loss rule, because these tort-based claims essentially duplicate her action for breach of contract.

Under Pennsylvania law an intentional or fraudulent misrepresentation is established by presenting clear and convincing evidence of (1) a misrepresentation of a material fact; (2) a fraudulent utterance thereof by the defendant; (3) an intention that the other person would thereby be induced to act, or to refrain from acting; (4) justifiable reliance by the recipient; and

10

(5) damage to the recipient caused by this reliance. In re Cara Corp., 148 B.R. 760, 771 (Bankr. E.D. Pa. 1992). The only distinguishing characteristics between intentional and negligent misrepresentations are a) the state of mind of the actor and b) the duty commonly assumed in negligence actions. See, Weisblatt v. Minnesota Mut. Life Ins. Co., 4 F. Supp.2d 371, 380 (E.D. Pa. 1998).

In Counts II and III of her Complaint, Sibeto alleges that Capella represented to Plaintiff (i) that she could earn a doctoral degree by completing certain coursework, (ii) that it would provide mentors and guidance throughout her dissertation process, (iii) that she was close to successfully completing her dissertation when in fact she was not, and (iv) that Capella continued to mislead Plaintiff so that she would continue to pay tuition.

Capella contends that because the predicate acts for Sibeto's negligent and intentional misrepresentation claims arise from the contractual relationship entered into between the parties, the "gist of the action" doctrine bars her claims. The Court agrees.

"As a practical matter, the [gist of the action] doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). Whether the gist of the action doctrine applies to bar a claim is a question of law. A number of courts have observed:

> [T]he test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.
>
> "Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action." Black's Law Dictionary 689 (6th ed.1990). "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law.... The "gist of the action" test, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit.

11

eToll, 811 A.2d at 15 (quoting American Guar. and Lia. Ins. Co., v. Fojanini, 90 F. Supp.2d 615, 622–23 (E.D. Pa. 2000)); Pollock v. Nat'l Football League, No.12-CV-130, 2013 WL 1102823 (W.D. Pa. Mar. 15, 2013), *aff'd*, 13-1987, 2014 WL 503640 (3d Cir. Feb. 10, 2014).

The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, but both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted that it will do so. See, Williams v. Hilton Group, PLC, 93 Fed. App'x 384, 385–86 (3d Cir. 2004); Reardon v. Allegheny Coll., 926 A.2d 477, 485 (Pa. Super. 2007); eToll, Inc, 811 A.2d at 14. As acknowledged in Reardon, *supra*, the Pennsylvania Supreme Court some forty years ago stated:

> To permit a promisee to sue his promissor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. Most courts have been cautious about permitting tort recovery for contractual breaches and we are in full accord with this policy. See Developments in the Law—Competitive Torts, 77 Harv. L. Rev. 888, 968 (1964). The methods of proof and the damages recoverable in actions for breach of contract are well established and need not be embellished by new procedures or new concepts which might tend to confuse both the bar and litigants.

Reardon v. Allegheny Coll., 926 A.2d at 486 (quoting Glazer v. Chandler, 414 Pa. 304, 200 A.2d 416, 418 (1964)).

Thus, the gist of the action doctrine bars a tort claim, such as negligent or intentional misrepresentation, when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) the success of the tort claim is wholly dependent upon the contract's terms. eToll, 811 A.2d at 19. When applying the gist of the action doctrine, the Pennsylvania Superior Court has explained that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. at 14 (quoting Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir.

12

2001)). "In other words, the court must inquire as to the source of the duties allegedly breached: 'if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort.'" Cunningham Lindsey U.S., Inc. v. Bonnani, No. 13-CV-2528, 2014 WL 1612632 (M.D. Pa. Apr. 22, 2014) (quoting Knit With v. Knitting Fever, Inc., 2009 U.S. Dist. LEXIS 98217, *13–14 (E.D. Pa. Oct. 20, 2009)).

Here, the parties' obligations arise solely from Sibeto's enrollment and payment of tuition to Capella, and Capella's Dissertation Manual. Any duties imposed on Capella were created as a result of her enrollment and the alleged breach was the failure to provide Sibeto with the benefit of the bargain entered into. Accordingly, the Court agrees with Defendant that Sibeto's intentional and negligent misrepresentation claims are barred by the gist of the action doctrine.

Alternatively, Capella claims Sibeto's tort claims are barred by the economic loss doctrine. The Court's recent opinion in Stillwagon v. Innsbrook Golf & Marina, LLC, No. 11-CV-1338, 2013 WL 1180312 (W.D. Pa. Mar. 20, 2013), confirms that Sibeto's claims are barred:

> Under Pennsylvania law, "[t]he Economic Loss Doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008) (quoting Adams v. Copper Beach Townhome Comtys., L.P., 816 A.2d 301, 305 (Pa. Super. 2003)).
>
> The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). The economic loss doctrine serves to maintain the separation between the law of contract and the law of tort. N. Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 564 A.2d 919, 925 (Pa. Super. Ct. 1989); Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 372 (E.D. Pa. 1996)

13

> (applying economic loss doctrine to service contracts); Kearney v. JPC Equestrian, Inc., No. 3:11–CV–01419, 2012 WL 1020276 (M.D. Pa. Jan. 4, 2012), *report & recommendation adopted* No. 3:11–CV–01419, 2012 WL 1020266 (M.D. Pa. Mar. 26, 2012) (economic loss doctrine appears to apply to employment contracts).
>
> While the Pennsylvania Supreme Court has not yet addressed whether the economic loss doctrine applies to claims for intentional fraud, the Third Circuit has held that the economic loss doctrine applies to claims for negligence, negligent misrepresentation, and intentional fraud. Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002).

Id. at *11. Sibeto alleges damages broadly, including a prayer for relief in the form of "compensatory damages in an amount to be determined at trial, including all tuition and other education-related expenses paid by plaintiff, lost time and lost future income." ECF No. 1, p. 18. In addition, she seeks treble and punitive damages, as well as attorneys' fees and costs. Id. However, because her claim does not arise out of physical injury or property damage, but resulted only in economic loss, it is recommended that Capella's Motion to Dismiss Sibeto's claims for intentional and negligent misrepresentation be dismissed as barred by the economic loss rule as well as the gist of the action doctrine. See, also, Dillon v. Ultrasound Diagnostic Schools, 1997 WL 805216 at *3.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Capella's Motion to Dismiss [ECF No. 9] be granted as to Sibeto's negligent and intentional misrepresentation claims (Counts II and III), but denied as to her statutory UTPCPL claim (Count IV).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
United States Magistrate Judge

Dated: June 13, 2014

cc: The Honorable Mark R. Hornak
United States District Judge

All counsel of record by Notice of Electronic Filing